## James Chandler v. The State.

### No. 6512.    Decided November 30, 1921.

**Murder—Manslaughter—Self-Defense—Insufficiency of the Evidence.**

Where, upon trial of murder and a conviction of manslaughter, the evidence showed self-defense on part of the defendant, the conviction could not be sustained.

Appeal from the District Court of Galveston. Tried below before the Honorable Robert G. Street.

Appeal from a conviction of manslaughter; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*R. G. Storey,* Assistant Attorney General, for the State.

MORROW, Presiding Judge.—Upon a charge of murder, appellant was convicted of manslaughter; punishment fixed at confinement in the penitentiary for a period of five years.

The homicide took place at the residence of appellant's wife, Alberta Chandler. A separation had taken place some four months before the homicide. Appellant and his wife were residing in different places, and

the deceased, Moungin, also lived in a separate house. Moungin and appellant's wife had lived together as husband and wife, and she had a child by him before he went into the army. She afterwards married appellant and lived with him until the return of the deceased. Upon his return, she, according to appellant, indicated a preference to the deceased, and the deceased told the appellant that he intended to have her. Upon this, the separation took place.

Upon the morning of the day upon which the homicide took place, Alberta Chandler sent word to the appellant by the witness, Washington, that she wanted him to come to her home and see her. Appellant demurred when he received this information and expressed his desire that she visit him. Upon her insistence, however, he later consented to visit her and went to her home on the occasion of the homicide, with the witnesses, Washington and Davis. On reaching the home of Alberta, Washington and Davis went into the kitchen, and there found the witness, Hunt, and the deceased. Washington and Davis left the premises, after which the deceased went into Alberta's room, where he was killed.

The facts stated above are all undisputed, and, in the main, come from witnesses other than the appellant. At the time of the homicide, the witness Hunt was in the kitchen. He testified that before the deceased entered the front room, he was whittling with a knife; that after he went into the room, he heard a pistol fire twice; that he entered the room and found Alberta and her child and the body of the deceased, but not the appellant. Prior to the reports of the pistol, nothing had occurred to attract his attention. The knife of the deceased, a spring-back knife with a blade about four inches long, was lying on the floor near his body. This fact was also proved by police officers who entered the premises soon after the shots were fired.

Appellant testified that on going to the residence of his wife in company with the witnesses, Washington and Davis, he entered the room occupied by her, and after the departure of Washington and Davis, who, in the meantime, had been in the kitchen, the deceased entered the room occupied at the time by appellant and Alberta, and said to her: "Thought you had told me you quit messing with that little monkey nigger," and at the same time snatching a knife from his pocket and starting to cut her; that she threw up her hands and exclaimed: "Please don't cut me." The appellant said: "Will Monguin, don't you cut my wife," whereupon the deceased attacked the appellant with his knife and was shot. Appellant claimed that he took the pistol to the house for protection; that deceased was a larger man and was feared by appellant.

We are not satisfied with the sufficiency of the evidence to show, beyond a reasonable doubt, that the homicide was unlawful. There is no description of it save that given by the appellant. In the main, his version is corroborated to the point that the deceased had been a paramour of the woman before their marriage, and after appellant's

return from the army, she was again the paramour of the deceased and appellant left her. Appellant went to her home, upon her solicitation, in company with two companions. No difficulty occurred until after their departure, when the deceased voluntarily sought the appellant with an open knife in his possession. This knife, after the homicide, was found near him. Appellant's version is not controverted by any direct testimony, and the only circumstance conflicting with it is the testimony of Hunt that prior to the shooting, he heard no disturbance in the room where the homicide took place. He is referred to as an old man. He was in a different part of the building. It is shown by him and others that they knew of no previous disturbance between appellant and the deceased. Hunt was expecting no trouble. According to appellant, but few words passed before the shooting, nor is it shown that they were spoken in a voice so loud that they would have necessarily or probably been heard by Hunt.

For the reasons stated, we are not content to sanction the conviction. The judgment is therefore reversed and the cause remanded.

*Reversed and remanded.*